IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-02416-RBJ

TOM HURD,

    Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY,

    Defendant.

---

## ORDER

---

This order addresses and grants defendant's motion to dismiss.

## BACKGROUND

The following facts are taken from plaintiff's Amended Complaint, ECF No. 20, and are assumed to be true for purposes of the pending motion.

Tom Hurd owns a five-unit residential building in Denver. On July 4, 2015 a fire caused by an air conditioner damaged the building including the unit in which Mr. Hurd was residing. He submitted a claim to his insurer, Auto-Owners Insurance Company. Auto-Owners retained AmeriClaim of Denver to inspect the damage. Mr. Hurd engaged a public adjuster, Adjusters International Colorado, to assist him with his claim.

AmeriClaim estimated a "Replacement Cost Value" of $112,111.71. On August 10, 2015 Auto-Owners issued a draft in the amount of $43,124.03, payable to Mr. Hurd and the

1

Adjusters International Colorado, for what it determined to be the "Actual Cost Value" of the damage less the deductible under the policy. Mr. Hurd did not receive the draft. On August 26, 2015 Mr. Hurd terminated his contract with Adjusters International Colorado. On August 27, 2015 Auto-Owners issued a second draft payable to Mr. Hurd and Adjusters International Colorado in the amount of $16,799.83. Again, Mr. Hurd did not receive the draft. Neither draft has ever been cashed.

Meanwhile, Mr. Hurd was disputing AmeriClaim's estimate of damage, primarily because he believed it did not provide for repairs sufficient to comply with the Denver Building Code, including asbestos mitigation. In March 2016 Mr. Hurd submitted his own estimate for damages and repairs, totaling $255,523.39.

AmeriClaim re-inspected the property in April 2016. On June 15, 2016 Auto-Owners issued a third draft payable to Mr. Hurd and Adjusters International Colorado in the amount of $4,981.86. Whether Mr. Hurd received that draft is unclear. On June 30, 2016 Auto-Owners issued its fourth and final draft, this time payable to Mr. Hurd, Adjusters International Colorado and Environmental Excellence Consulting and Testing (an asbestos testing company) in the amount of $3,152.00. He apparently received this one but believed that accepting it would endorse asbestos testing results with which he disagreed.

Meanwhile, also in June 2016 Mr. Hurd retained counsel. Unfortunately, on September 15, 2016 the lawyer informed Mr. Hurd that he was ill and returned the file.[1] On September 16, 2016 Auto-Owners' claims adjuster sent an email to Mr. Hurd's former counsel with a

---

[1] Notwithstanding that Mr. Hurd's lawyer had returned the file, Mr. Hurd alleges that he thought he was still being represented. The lawyer died in November 2016, but Mr. Hurd did not learn of the death until the spring of 2017.

"deadline" of October 17, 2016 to resolve the claim. The former counsel responded on September 20, 2016 and asked the adjuster to contact Mr. Hurd directly. On September 22, 2016 the adjuster "allegedly left a voicemail for Plaintiff." ECF No. 20 at 27. On October 19, 2016 the adjuster sent Mr. Hurd a letter advising him that the claim file was closed.

Mr. Hurd turned 82 years old on July 4, 2017. He states that by that time he "had repeatedly told carrier, verbally and in writing, he did not understand the payment and review process for the damage to his home and asked for clarification." *Id.* At 29. Finally, on August 11, 2017 Mr. Hurd "attempt[ed] to contact Defendant with no response." *Id.* At 30.

On June 29, 2018 Mr. Hurd, represented by counsel, filed the present lawsuit in the Denver District Court. Auto-Owners removed the case to this Court based on diversity of citizenship and thereafter filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 12. Mr. Hurd, still represented by counsel, filed a response but simultaneously filed a motion to amend his complaint. ECF Nos. 14 and 15. The Court granted the motion to amend, which mooted the motion to dismiss. ECF Nos. 18 and 19.

Plaintiff's Amended Complaint was filed on November 27, 2018. Three days later plaintiff's counsel moved to withdraw, citing a breakdown in the attorney-client relationship. ECF No. 21. On December 11, 2018 the motion to withdraw was granted. Auto-Owners filed the pending motion to dismiss on the same day. ECF No. 24.

Mr. Hurd, now representing himself, did not respond to the motion to dismiss. However, on February 12, 2019 – well after the deadline for responding to the motion had passed – Mr. Hurd moved for the appointment of counsel pursuant to this district's Civil Pro Bono Program. ECF No. 30. The Court held a scheduling conference on February 13, 2019 and issued a

Scheduling Order. ECF Nos. 29, 32. On February 19, 2019 the Court issued an order appointing counsel from the Civil Pro Bono panel to represent Mr. Hurd, thus mooting the pending motion for such an appointment. ECF No. 33.

For more than five months the Clerk's Office attempted to locate a member of the Civil Pro Bono Panel who was available and willing to take Mr. Hurd's case. Finally, on July 31, 2019 the Court issued a Minute Order which explained its failure to find a pro bono lawyer for Mr. Hurd and set a new deadline of August 19, 2019 to file a response to the motion to dismiss that had been pending since December 11, 2018. The Court warned that if no response were filed, the Court would review the motion and either grant it on its merits or dismiss the case without prejudice for failure to prosecute. ECF No 36. That deadline has come and gone, and no response to the motion has been filed.

## CONCLUSIONS

The motion is based on a provision in the insurance policy requiring that a legal action be filed "within 2 years after the date on which the direct physical loss or damage occurred." ECF No. 24 at 2 (citing ECF No. 24-1 at 2, Commercial Property Conditions, D(2)). The fire occurred on July 4, 2015. The lawsuit was filed on June 29, 2018, nearly three years after the date of loss. On its face the policy term would appear to bar the suit.

However, it is not clear to the Court whether there might have been a basis equitably to toll the running of the period of limitation. Mr. Hurd hired and later terminated a "public adjuster." Four drafts or checks were sent to Mr. Hurd, each payable to him and the (terminated) public adjuster, and one all payable to an asbestos testing company. None of the drafts or checks has been cashed, but what happened to them is unknown to the Court. Presumably the insurance

company still owes the money that it determined that it owed and tried to pay. Meanwhile, Mr. Hurd's first lawyer died, his second lawyer withdrew, and the Court was unable to secure a pro bono volunteer lawyer for him. For all these reasons, the Court elects to dismiss this case without prejudice for failure to prosecute.

**ORDER**

1. This civil action and all claims therein are dismissed without prejudice for failure to prosecute.
2. Defendant's motion to dismiss for failure to state a claim, ECF No. 24, is moot.
3. As the prevailing party, defendant is awarded reasonable costs to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 9th day of September, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge